# Hirano v. Journeyman Cooks' Union No. 18 et al.

*District Court of Arapahoe Co., Sept. 9, 1901, No. 3303_9.*

W. N. Vaile and Robert Young, attorneys for plaintiff; John H. Murphy attorney for defendants.

CARPENTER, J.

The plaintiff brings his action against the Journeymen Cooks' Union No. 18 and Edward J. Harnish, its president; Waiters' Union No. 14 and W. B. Harris, its president.

In his complaint the plaintiff states that he is engaged in the business of restaurant keeper at No. 737 Larimer street, in this city; his restaurant being known as the The Silver Moon; that the associations defendant are organized trades unions, their respective presidents being the defendants Harnish and Harris. He further states that on the 23d day of July last a number of persons whose names he does not know, but being members of the unions above named, acting under their order and authority with intent to injure the plaintiff, entered his said restaurant against his will and protest, "and by threats, intimidation and persuasion, induced all of the servants of the plaintiff to leave the employ of the plaintiff, the said Hirano." It is also stated in the complaint that certain persons whose names plaintiff does not know, members of the said unions, and acting under their authority and orders, "stationed themselves in front of plaintiff's restaurant, as aforesaid, and by threats, intimidation and persuasion, and also by force and arms, prevented many and divers persons from entering plaintiff's restaurant aforesaid to be served with meals or for any other purpose, and endeavored by the means aforesaid to prevent from so entering any and all persons attempting to so enter." It is further averred that members of said unions, acting under their authority, have coutinued since July 23d to endeavor to prevent persons from entering the said restaurant, and that these persons and the defendants "threaten and propose to continue to prevent and endeavor to prevent any and all persons from so entering the plaintiff's restaurant, until such time as the plaintiff shall have been ruined and driven out of business." Plaintiff says further that he has, as the result of the acts complained of suffered an almost total loss of his

business, and has been damaged to the amount of $7,000.

Plaintiff prays, among other things, for the issuance of an injunction restraining the defendants and persons acting under them "from preventing or dissuading or attempting to dissuade or prevent any persons from patronizing or entering into the aforesaid restaurant."

Plaintiff moved for a temporary injunction *ex parte*, but upon suggestion from the court notice was given the defendants of the purpose of the plaintiff to make such motion, and upon their appearance by attorney it was agreed that the matter should be heard at a later day upon the pleadings and affidavits to be filed.

Before the motion came on to be heard, the defendants filed their answer denying that they or any persons acting under them had conspired to injure the plaintiff by any force, and denying that they the said defendants used any threats or intimidation or other unlawful means to induce the servants of the plaintiff to leave his employment. They deny that any person or persons members of their unions while acting under orders or request of the defendants stationed themselves in front of the restaurant and by threats or by force or arms or by any unlawful means prevented persons from entering the restaurant. They deny also that the plaintiff has suffered any damage by reason of any action on the part of the defendants or persons acting under them.

For a further defense they set up that the associations defendant are organized for various purposes, among others to endeavor to establish and maintain such wages as will enable their membership to procure some of the necessaries of life for them-

selves and their families; that such unions have established a minimum wage, and that less wages than those established by them will not support the members and their families. They say further that on the 22d day of July they requested the plaintiff to pay his employes in accordance with the scale fixed by the union, and he refused, and the members of the unions were informed of this fact. It is stated that no action was taken at any of the meetings of the unions concerning the matter, and that if the members acted in the premises it was of their own volition. Upon information and belief, defendants say, members of the unions asked the employes of the plaintiff to assist in promoting their own interests as well as the interests of others; that they used no threats, duress or violence of any kind, but that they dealt with these employes in a friendly and peaceable manner; that the defendants claim the right, where an employer does not pay the wages considered by the union sufficient, to go to such employer and "in a respectful manner present for consideration and adoption such scale of wages and other conditions of employment as they believe to be fair;" that upon refusal they claim the right, without trespassing upon the premises of the employer to interview his employes and induce them to assist in getting the scale and other conditions adopted. They also "claim the right to see any and all persons whom they may choose to see, and tell such persons that the plaintiff has, if such be the fact, refused to adopt their scale or deal with them." And they disclaim any intention to trespass or interfere with the ingress or egress of the plaintiff's place of business, or to use any force or intimidation in the accomplishment of their ends.

The plaintiff presents his own affidavit and that

of his wife, as well as of a number of other persons, to support the allegations of his complaint. The defendants file affidavits of members of the unions to the effect that the affiants were members of a committee appointed by the union to persuade the plaintiff to adopt the union scale of wages, and denying that they used or authorized the use of force or intimidation. The defendants file also a number of affidavits from business men doing business in the vicinity of the Silver Moon restaurant, in which the affiants state that they saw nothing of the tumultuous conduct averred in the affidavits of the plaintiff to have taken place in front of his place of business.

From the pleadings in the case and the affidavits on file, I find the facts to be substantially as follows:

The unions defendant, upon being advised that Hirano was not paying his employes wages as high as the union scale, requested him to do so. He refused. Thereupon members of the union induced the plaintiff's servants to leave his employment, and they also placed pickets at and near the entrance to the plaintiff's restaurant for the purpose of dissuading persons from patronizing the restaurant. At some hours of the day these pickets would be but two in number, but about the times when it is customary for people to dine this number would be increased. When persons would appear to be about to enter the plaintiff's restaurant they would be approached by one or more of the pickets and requested not to patronize the place on the ground that it was a non-union restaurant. The pickets met with considerable success, and many people who otherwise would have taken their meals in the restaurant did not do so.

I do not think the evidence warrants a finding that threats, menaces and intimidation or violence

were used by pickets. It is true that in some instances the language used with respect to the plaintiff and his house was not of the purest, and the conduct of the pickets was at times somewhat rude and discourteous. At times they would go so far as to place their hands upon the arm of the person about to enter the restaurant. I am inclined to believe that whatever rudeness of speech was indulged in and the taking of intended patrons by the arm, were the result of earnestness and zeal, and not with a view to intimidation, or with any purpose or intention of forcibly or by threats of force keeping persons out of the plaintiff's place of business.

It is earnestly contended by defendants' counsel that there is nothing in the affidavits to show that the pickets were acting under the orders or at the request of their respective unions; and if the affidavits alone were to be considered that part of the plaintiff's case, in my opinion, would not be made out. But it seems to me that all through the answer there runs an admission by implication that the unions did authorize and direct their members, or some of them. to induce the plaintiff's servants to leave him, and to picket his premises. The denial, as I read the answer, is simply that they authorized or directed the use of force, threats, menaces or intimidation. But whether this be true or not, my conclusion is the same.

The question presented is whether persons may combine to induce another's servants to leave his employment (there being no time contract), and whether it be lawful to place pickets in the neighborhood of an employer's place of business to induce the public, by peaceable means, not to patronize it.

The case was argued by the counsel of the respective parties at considerable length, and with

earnestness and ability; and quite a large number of cases were presented for examination and consideration. I have examined nearly all of them. I think, however, it would not be profitable to take the cases up singly and analyze them. I shall content myself with referring to our own statute and some two or three of the decisions.

1 Mills Ann. St. § 1295, is as follows:

"It shall not be unlawful for any two or more persons to unite, or combine, or agree in any manner, to advise or encourage, by peaceable means, any person or persons to enter into any combination in relation to entering into or remaining in the employment of any person, persons or corporation, or in relation to the amount of wages or compensation to be paid for labor, or for the purpose of regulating the hours of labor, or for the procuring of fair and just treatment for employes, or for the purpose of aiding and protecting their welfare and interests in any other manner not in violation of the constitution of this state or the laws made in pursuance thereof; Provided, That this act shall not be so construed as to permit two or more persons, by threats of either bodily or financial injury, or by any display of force, to prevent or intimidate any other person from continuing in such employment as he may see fit, or to boycott or intimidate any employer of labor."

This statute would seem to be conclusive upon the right of the defendants, or their members, by peaceable means, to procure the plaintiff's servants to quit his service; and I think nothing need be said further with respect to that branch of the case, inasmuch as the court finds that no threats or intimidation, within the legal meaning of those terms, was used to induce the plaintiff's servants to leave him.

With respect to the other branch of the case,

namely, the picketing, there may be some question as to whether it is within the purview of the section, and so I have been at some pains to examine the adjudged cases to determine independently of the statute what the law is. It seems to me that it cannot be said to be unlawful for one to endeavor to persuade another person, or many persons, not to give their patronage to a tradesman; and this regardless of the motive which prompts such effort. The result of such persuasion may be to cause a withdrawal of a great amount of patronage from the tradesman; it may work him an irreparable injury, and yet he would have no recourse. The fact that the person persuading is a member of a labor organization or union can make no difference. All the courts agree that these organizations are lawful, and that they have the right to use all lawful means in furtherance of what they deem to be their interest:

In Ulery v. Chicago Live Stock Exchange, 54 Ill. 233, the court uses the following language:

"The plaintiff's action is for an injury resulting from the doing of a lawful act in a lawful manner.

"A person, with or without reason, may refuse to trade with another; so may 10 or 50 persons refuse.

"An individual may advise his neighbor or friend not to trade with another neighbor; he may even command when the command amounts only to earnest advise.

"The act here complained of is not a nuisance, as were the acts in general in Sherry v. Perkins, 147 Mass. 212. Nor was the defendant's act riotous, tumultuous, or one tending to a breach of the peace; nor was it a conspiracy to do an unlawful act.

"It is not an unlawful interference with the trade of another to advise people to deal with his compet-

itor, or to decline to do business with him. Nor is it now unlawful to combine to raise the rate of wages."

In my judgment, this is a correct statement of the law. Now if one may lawfully advise another not to trade with a certain person, any number may do so. This statement is born out by the opinion of our own court of appeals in the case of Master Builder's Association v. Damascia, 2 Colo. Dec. 481. In this case the members of the association addressed a letter to a firm of architects to the effect that if the architects entertained a bid from Damascio for the construction of a certain building the writers would not bid. The court held that the Master Builders had a right to decline to enter into competition with the plaintiff Damascio, and, as I understand the opinion, laid down the rule that what one may lawfully do any number may lawfully do; and that although injury may result, the law can afford no redress.

It was urged in the argument that the number of pickets and their manner amounted to intimidation of customers; but as I have stated above I do not think the affidavits warrant me in so finding. A large number of business men in the vicinity say they observed no disturbance. Imhoff, who made an affidavit for the plaintiff, makes one also for the defendant in which he says there was no disturbance. One of the principal witnesses for the plaintiff, Ellingson, says in his affidavit that when he was requested not to patronize the restaurant he simply laughed and passed on into the room. He does not intimate that anybody tried to stop him by force or threats. He entered, ate his meal, and passed out, without being interfered with.

An excerpt from the opinion of Justice Herschell in the recent case of Allen v. Flood, decided in the House of Lords, in 1898, may not be improper here,

in view of the language used by the plaintiff in his complaint and in his affidavit in support thereof. Says the learned judge:

"On the other hand it is undeniable that the terms 'threat,' 'coercion,' and even 'intimidation,' are often applied in popular language to utterances which are quite lawful and which give rise to no liability either civil or criminal. They mean no more than this, that the so-called threats put pressure, and perhaps extreme pressure, on the person to whom it is addressed to take a particular course. Of this kind numberless instances might be given. Even then, if it can be said without abuse of language that the employers were intimidated and coerced by the appellant, even if this be in a certain sense true, it by no means follows that he committed a wrong or is under any legal liability for his act. Everything depends on the nature of the representation or statement by which the pressure was exercised. The law cannot regard the act differently because you choose to call it a threat or coercion, instead of an intimation or warning."

If the members of these unions had visited the patrons of the plaintiff at their respective places of business, or residences, and, without threat or injury to person or property, urged them not to give him their patronage, no one would say that such acts were unlawful. It certainly then could not be unlawful for them to do the same thing on the public street, so long as their conduct was not of so boisterous and disorderly a nature as to constitute a disturbance of the public peace.

What the rule should be in respect to the granting of an injunction in a case where threats of injury to person or property are made need not be determined in this case. I simply rule that it is not unlaw-

ful for pickets in a peaceable and orderly manner to attempt to persuade persons not to trade with a certain individual.

The motion for a temporary writ of injunction is denied.